UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
UNITED STATES OF AMERICA for
the use and benefit of MIDTOWN
CONTRACTING, LLC,

**MEMORANDUM OF
DECISION AND ORDER**

Plaintiff,

15-CV-00966 (LDH) (MDG)

-against-

AIM STEEL INTERNATIONAL, INC.; MACKNAK-
KORTE DESIGN BUILD, LLC; MACKNAK
CONSTRUCTION, LLC; KORTE CONSTRUCTION
COMPANY; and TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,

Defendants.
-------------------------------------------------------------------x
LASHANN DEARCY HALL, United States District Judge:

Plaintiff Midtown Contracting, LLC ("Midtown") asserts claims under the Miller Act, 40 U.S.C. § 3133, against Defendants Macknak-Korte Design Build, LLC; Macknak Construction, LLC; Korte Construction Company (collectively, "Macknak-Korte"); and Travelers Casualty and Surety Company of America (collectively, the "Defendants"). Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

**UNDISPUTED FACTS**

In March 2013, Macknak-Korte contracted with the United States Department of the Army (the "Prime Contract") to act as the prime contractor for the development of an addition and alteration to the Army Reserve Center at Fort Wadsworth in Staten Island, New York (the "Project"). (Defs.' Reply ¶ 1, ECF No. 42; Stanford Decl. Ex. A 1, ECF No. 38-4.) Pursuant to its requirements under the Prime Contract, Macknak-Korte obtained a payment bond from Travelers Casualty and Surety Company of America. (Defs.' Reply ¶ 2.) In connection with the

1

Project, Macknak-Korte also subcontracted with AIM Steel International, Inc. ("AIM") for steel supply and erection services. (*Id.* ¶ 3.) AIM, in turn, subcontracted with Midtown for a portion of those services (the "AIM subcontract"). (*Id.* ¶ 4.) As such, AIM and Midtown were first-tier and second-tier subcontractors on the Project, respectively. (*Id.* ¶¶ 4-5.)

Pursuant to the AIM subcontract, Midtown worked on the Project in 2014. (Defs.' Reply ¶ 6.) Midtown's invoices show that the last date it worked on the Project under the AIM subcontract was August 20, 2014. (*Id.*) Thereafter, pursuant to a separate August 29, 2014 proposal, Macknak-Korte purchased additional material for the Project from Midtown (the "Macknak-Korte Contract"). (*Id.* ¶¶ 7-8; Stanford Decl. Ex. E, ECF No. 38-6.) Materials ordered under the Macknak-Korte Contract, which Midtown states were delivered in mid-to-late September 2014, were paid for in full. (Defs.' Reply ¶ 8; Pl.'s Opp'n 4, ECF No. 38-7.) Midtown alleges, however, that certain amounts invoiced on the AIM Subcontract remain outstanding. (Compl. ¶ 17, ECF No. 1.)

On February 24, 2015, Midtown filed the instant action, seeking payment from AIM or, in the alternative, Defendants for at least $150,000 that allegedly remains owed and due under the AIM subcontract. (Compl., ECF No. 1.) On August 28, 2015, Midtown's claims against AIM were transferred to the United States District Court for the Northern District of Georgia, leaving only Plaintiff's claims against the Defendants before this Court. (August 28, 2015 Order.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (same). A genuine dispute of material fact exists when the evidence as to a fact that might affect the suit's outcome is such that a reasonable jury could find in favor of the non-movant at trial. *Anderson*, 477 U.S. at 248. The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970)); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once the movant meets that burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248 (noting that a party opposing a properly supported motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial); *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) (the non-moving party must "go beyond the pleadings" to show that there is a genuine issue for trial). To do so, non-movants must present concrete evidence and rely on more than conclusory or speculative claims. *See Castro v. County of Nassau*, 739 F. Supp. 2d 153, 165 (E.D.N.Y. 2010) ("[T]he nonmoving party may not rest upon mere conclusory allegations or denials but must set forth 'concrete particulars' showing that a trial is needed.") (citing *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984)). That is, although the Court is to view the facts presented in the light most favorable to the non-movant, drawing all reasonable inferences in its favor, *Anderson*, 477 U.S. at 255, the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts. *Castro*, 739 F. Supp. 2d at 165 (E.D.N.Y. 2010) (citing *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996)).

**DISCUSSION**

The Miller Act establishes payment protection for persons supplying labor and materials on federal construction projects. *See United States ex rel. Dragone Bros. v. Moniaros Contracting Corp.*, 882 F. Supp. 1267, 1270 (E.D.N.Y. 1995) (citing 40 U.S.C. § 270b(a)). Consistent with its remedial purpose, the Miller Act permits a second-tier subcontractor to recover amounts owed to it by a first-tier subcontractor by bringing an action against a prime contractor on the payment bond. *Id.* at 1272 (noting that the Miller Act is a "highly remedial" statute); 40 U.S.C. § 3133(b)(2) ("A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond[.]"). Careful to protect prime contractors against the potential for double payment, Congress included a notice requirement as a condition precedent to commencing any such action.

To sue under the Act, a second-tier subcontractor is required to first give sufficient and timely notice to the prime contractor of the first-tier subcontractor's non-payment. *Id.*; *see also United States Use of Robert DeFilippis Crane Serv., Inc. v. William L. Crow Constr. Co.*, 826 F. Supp. 647, 652 (E.D.N.Y. 1993) (describing notice requirement). When met, this strictly enforced notice requirement permits a prime contractor to understand the total scope of its obligations and alerts it that it may need to withhold payment from the first tier-subcontractor for amounts the second-tier subcontractor may subsequently recover from it. *Robert DeFilippis Crane Serv., Inc.*, 826 F. Supp. at 652 (The Miller Act "protects the prime contractor by requiring those who have no direct contractual relationship with the prime contractor but have 'furnished or supplied' material to the project to provide timely notice of a subcontractor's non-payment. Without such notice, the prime contractor would have no ready means to determine

the extent of its ultimate obligations."); *see also United States use of General Electric Co. v. H. I. Lewis Constr. Co*., 375 F.2d 194, 201 (2d Cir. 1967) (the Act's notice requirements are "mandatory" and "a strict condition precedent to the existence of any right of action upon the prime contractor's bond"); *United States use of Charles R. Joyce & Son, Inc. v. F. A. Baehner, Inc*., 326 F.2d 556, 558 (2d Cir. 1964) (even under a liberal interpretation of the Miller Act, compliance with the Act's notice requirements must be satisfied); *Burack, Inc. v. Sovereign Constr. Co.*, 338 F. Supp. 657, 661 (S.D.N.Y. 1972) ("After notice is given by a supplier, a contractor ordinarily is able to protect himself by withholding appropriate sums from his payments to the subcontractor.").

To be sufficient, the Miller Act provides that notice must "state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed." 40 U.S.C. § 3133(b)(2). Notice must also expressly or impliedly inform the prime contractor that the second-tier subcontractor is looking to it for payment. *Charles R. Joyce & Son, Inc.*, 326 F.2d at 558 (the Miller Act's notice requirement has been construed as requiring that the writing "inform the prime contractor, expressly or by implication, that the supplier is looking to the contractor for payment of the subcontractor's bill") (quoting *Bowden v. United States*, 239 F.2d 572, 577 (9th Cir. 1956)). In addition to these substantive requirements, notice under the Act must be made, in writing, within "90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made." 40 U.S.C. § 3133(b)(2). The 90-day window is measured from the day the unpaid party fulfilled its obligations under the contract upon which its claims are premised. *Robert DeFilippis Crane Serv., Inc.*, 826 F. Supp. at 655 (a Miller Act claim "must be made pursuant to an underlying contract," and "the supplier must

5

present [such] claim within 90 days after 'the last of the material' is supplied under that contract.") (quoting 40 U.S.C. § 3133(b)(2)).

In this case, Plaintiff maintains that, not only was the notice requirement met, it was satisfied fully by no fewer than three communications: (1) an October 17, 2014 email between AIM, Midtown, and Macknak-Korte representatives (Defs.' Reply ¶ 16; Lynch Decl. Ex. B, ECF No. 38-8.); (2) a December 16, 2014 letter from the Department of the Army to Midtown (Defs.' Reply ¶ 18; Lynch Decl. Ex. D.); and (3) a December 30, 2014 letter from Defendant Travelers Casualty and Surety Company of America to Midtown (Defs.' Reply ¶ 19; Lynch Decl. Ex. E.). Defendants argue that each of these communications fail to satisfy the notice requirements because they are either inadequate or untimely. (Mem. Supp. Mot. Summ. J. 3, ECF No. 38.) The Court agrees.

I. The October 17, 2014 Email is Insufficient

In the October 17, 2014 email, Macknak-Korte states: "To date [AIM has] been paid everything they have billed but [AIM has] not yet billed in full which is why I assume you [Midtown] have not been paid."[1] (Lynch Decl. Ex. B.) Nothing in this email demonstrates that Midtown provided Macknak-Korte any of the information required under the notice requirements. Conspicuously absent is any mention of the claimed amount owed. Moreover, the email does not notify Macknak-Korte, either expressly or impliedly, that Midtown is asserting a claim directly against it. At best, the letter evinces Macknak-Korte's awareness that AIM owed money to Midtown. This information does not meet the notice requirements under the Miller Act. *See United States for use and Benefit of J.A. Edwards & Co. v. Thompson Constr. Corp.*, 273 F.2d 873, 877-878 (2d Cir. 1959) (notice that first-tier subcontractor owed unspecified

---

[1] The inquiry underlying this communication is not part of the record.

amounts to plaintiff, second-tier subcontractor, coupled with request that defendant, prime contractor, make future payments owed to first-tier subcontractor payable to plaintiff, did not suffice to alert defendant of a claim against it, as required by the Miller Act); *see also Charles R. Joyce & Son, Inc.*, 326 F.2d at 558 (notice was not sufficient under the Miller Act where defendant was only advised that subcontractor owed amounts to plaintiff but otherwise not notified that plaintiff would look to defendant for payment).

II. The December 16 and 30, 2014 Letters are Untimely

Plaintiff's claims are premised on labor and materials furnished pursuant to the AIM subcontract. (Defs.' Reply ¶ 10.) It is likewise undisputed that Plaintiff's last recorded day of labor under the AIM subcontract was August 20, 2014.[2] (Defs.' Reply ¶ 6.) Thus, using the AIM subcontract as the basis for calculating compliance with the Miller Act's 90-day requirement, notice had to be sent to Macknak-Korte no later than November 18, 2014. Both the December 16 and December 30 letters clearly fall outside of this 90-day window.

To avoid summary judgment, Plaintiff argues that the Court should not measure the notice deadline from its last day of work on the AIM subcontract. (Opp'n 4-5.) Instead, Plaintiff contends that the Macknak-Korte contract tolled the 90-day window and that compliance with the 90-day rule should be measured from Midtown's delivery under the Macknak-Korte contract in mid-September 2014. (*Id.* at 4.) There is no basis in law for the Court to adopt such an approach. Indeed, the only support offered by Plaintiff are two cases where summary judgment was precluded because a question of fact existed regarding the final delivery date on the contract

---

[2] Although Plaintiff cites case law for the proposition that a final invoice does not necessarily identify the conclusion of work under an agreement, (Opp'n 3), it admits that "[b]ased on Midtown's Final Certified Payroll Reports on the Project . . . Midtown's last day of work [on the AIM Subcontract] was August 20, 2014." (Defs's Reply ¶ 6.) Further, Plaintiff does not suggest that any other date was its final day of work on the AIM subcontract and offers no evidence to support an alternative date.

7

under which Plaintiff demanded payment. *See CEI, Inc. v. Nat'l Interior Contractor, Inc.*, No. 95-cv-0205, 1996 WL 365688, at *3 (N.D.N.Y. June 24, 1996); *United States use of Air Stream Products Co. v. Essential Construction Co.*, 363 F. Supp. 681, 682 (S.D.N.Y. 1973) (noting that the crucial question is whether the final delivery was made pursuant to an "over-all contract"). No such question exists here. The subsequent Macknak-Korte contract, for which it was paid in full, is not associated with the AIM Subcontract. (Defs.' Reply ¶ 7.) In fact, the only connection Plaintiff draws between the Macknak-Korte Contract and the AIM subcontract is that they both related to the Project. (Opp'n 4.) This fact is not a basis for tolling the Act's notice requirement. *See CEI, Inc.*, 1996 WL 365688 at *2 (case law has consistently held that subsequent repair work on items furnished pursuant to a subcontract does not toll the Miller Act's 90-day notice requirement for claims arising from that subcontract). The December letters are untimely, and Plaintiff has failed to raise a genuine issue of fact regarding its standing to seek payment from Defendants under the Miller Act.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is hereby granted. Plaintiff's claims against the Defendants are hereby dismissed, with prejudice.

**SO ORDERED.**

Dated: August 19, 2016
      Brooklyn, New York

                                        /s/ LDH
                                   LaSHANN DeARCY HALL
                                   U.S. District Judge
                                   Eastern District of New York